DORIS J. PFEIFFER, APPELLEE AND CROSS-APPELLANT, V. BEN C. PFEIFFER, APPELLANT AND CROSS-APPELLEE.

277 N. W. 2d 575

Filed April 17, 1979. No. 41974.

Philip M. Kneifl of Kneifl, Kneifl & Forrest, for appellant.

Michael J. Mooney of McCormack, Cooney & Mooney, for appellee.

Heard before KRIVOSHA, C. J., McCOWN, CLINTON, and WHITE, JJ., and KELLY, L. W., JR., District Judge.

McCOWN, J.

This is an action for dissolution of marriage. The District Court dissolved the marriage, divided the property of the parties, and awarded alimony to the wife. The husband has appealed and the wife has cross-appealed.

The parties were married on October 14, 1944. At the time of trial in October 1977, the husband was 59 years old and the wife was 55. They had four children, all of whom had attained their majority prior to trial. In 1970 the wife left the family home and on September 3, 1970, filed a petition for divorce from bed and board. On September 10, 1970, the trial court entered an order granting custody of the two minor children still at home to the husband, and directing the payment of temporary support for the wife. On October 5, 1970, the husband answered and filed a cross-petition for a decree of absolute divorce. No further action was taken until 1977. All support payments were made. The husband filed an amended answer and cross-petition on April 12, 1977, in which he alleged that all the children had attained their majority and renewed the prayer for absolute divorce. Trial was held in October 1977.

From the time of the marriage in 1944 until 1946, when the husband returned from active military duty as a pilot in World War II, the wife continued to work as a registered nurse. After 1946 she worked only occasionally until 1961, and not thereafter. Upon return from active duty, the husband operated an appliance business in South Omaha until he was recalled to active duty in the Korean War in 1951. He served as a pilot in Korea until 1953. In 1953, he again retired from active military duty. At that time he and another individual organized a corporation known as Majors, Inc., whose principal business is the manufacture and distribution of custom-designed plastic products. The corporation is a closely-held corporation in which the husband owns 160 of 265 shares. He is the president and chief operations officer of the corporation. The operation of the corporate business has been the sole business activity of the husband since 1953.

Sometime in the mid-1950's the wife became an alcoholic and was hospitalized several times between 1961 and 1967 for alcoholism. In 1968 the wife fell down the basement steps at the family home and fractured her skull. She suffered an organic brain syndrome and depressive neurosis, and is not employable. Since she left the family residence in 1970, she has lived alone in an apartment, while the husband continued to occupy the family residence.

The parties filed separate income tax returns after 1970. In addition to support payments from the husband the wife receives income as a life beneficiary of a testamentary trust. In 1976 her income tax return shows an adjusted gross income of $8,827, of which $3,600 was support payments received from the husband. Her living expenses in 1977 were $669 per month, including medical expense.

The husband's salary as president of his corporation from 1970 to 1976 varied from $43,000 to $45,000 per year. He also received a variable bonus from

year to year, and in 1976 his combined salary and bonus was $62,300.

At the time of trial the marital assets in the possession of the husband consisted of the residence valued at $38,850, against which there was a mortgage of $6,500; a tract of desert property worth $1,200; $5,000 cash value of life insurance; savings accounts of $6,299; and miscellaneous stocks, other than the Majors, Inc., stock, valued at $5,725. The principal asset was the 160 shares of Majors, Inc., which had a net book value of $350,385.44. There was some evidence that the stock was worth more than that amount and there was also evidence that it was worth less and that the business was declining. The husband also had a bank indebtedness of $8,000.

The assets in the possession of the wife consisted of certificates of deposit in the amount of $17,000; a checking account in the amount of $3,073.20; and savings accounts of $1,456.08.

On November 28, 1977, the court announced its findings and decision and directed that a decree be submitted. On December 5, 1977, counsel for the wife submitted the form of decree to the court and filed a motion for new trial. The decree was signed by the court and entered on the trial docket on December 6, 1977.

The decree awarded the wife, as a property division, all personal property and belongings in her possession and the sum of $39,000 payable over a period of 6 years, with payments to commence on or before June 1, 1978, with interest on the unpaid principal balance at 7½ percent per annum. The wife was also awarded alimony in the amount of $475 per month for a period of 121 months, commencing December 1, 1977. The husband was awarded the residence subject to the mortgage, and all personal property and personal belongings in his possession, including the stock of Majors, Inc., subject to any indebtedness, and directed the husband to pay attor-

ney's fees of the wife in the amount of $7,250.

On December 8, 1977, the husband filed a motion for new trial. On January 11, 1978, a hearing was held on both motions for new trial and the husband orally objected to the wife's motion for new trial as being prematurely filed. On February 7, 1978, after a further hearing, the court granted the wife's motion for new trial, overruled the husband's motion for new trial, and modified the decree by vacating the portion of the December decree awarding $39,000 to the wife and substituting instead the sum of $60,000. In all other respects the December decree was confirmed. The husband has appealed and the wife has cross-appealed.

The husband's principal contention on appeal is that the wife's motion for a new trial filed on December 5, 1977, was premature, and a nullity, and there was, therefore, no jurisdiction to modify the December decree. Although the motion for new trial and the form of decree were both delivered to the clerk of the District Court on December 5, 1977, the decree was not signed and entered on the trial docket until December 6, 1977. The husband relies on the cases of Spanheimer Roofing & Supply Co. v. Thompson, 198 Neb. 710, 255 N. W. 2d 265, and State ex rel. Kaipus v. Board of Trustees of S. & I. Dist. No. 113, 200 Neb. 525, 264 N. W. 2d 422. Those cases both held that no judgment is rendered until the pronouncement thereof is entered on the trial docket, and that a motion for new trial filed prior to the rendition of a judgment is premature and constitutes a nullity.

The court has reconsidered the basic issues involved in those holdings as applied to a notice of appeal. See Dale Electronics, Inc. v. Federal Ins. Co., *ante* p. 133, 277 N. W. 2d 572. We now hold that a motion for new trial filed after the trial court has announced its decision, but before a judgment has been rendered or entered, is effective and does not consti-

tute a nullity if the record shows that the motion for new trial relates to the decision which has been announced by the trial court and the record shows that a judgment was subsequently rendered or entered in accordance with the decision which was announced and to which the motion for new trial relates. To the extent that Spanheimer Roofing & Supply Co. v. Thompson, 198 Neb. 710, 255 N. W. 2d 265; State ex rel. Kaipus v. Board of Trustees of S. & I. Dist. No. 113, 200 Neb. 525, 264 N. W. 2d 422; and similar cases are inconsistent with this holding, those cases are overruled.

Both husband and wife contend that the division of property was inequitable. The wife contends that generally speaking the wife should receive from ⅓ to ½ of the value of the property involved, depending upon the facts and circumstances, but not less than ⅓ in any event. The rules for determining alimony or division of property in an action for dissolution of marriage provide no mathematical formula by which such awards can be precisely determined. They are to be determined by the facts in each case and the courts will consider all pertinent facts in reaching an award that is just and equitable. Hanisch v. Hanisch, 195 Neb. 204, 237 N. W. 2d 407.

The fixing of alimony or distribution of property rests in the sound discretion of the District Court and in the absence of an abuse of discretion will not be disturbed on appeal. Phillips v. Phillips, 200 Neb. 253, 263 N. W. 2d 447. There was no abuse of discretion here.

The husband contends that the attorney's fees awarded to the wife were excessive. An award of attorney's fees in an action for dissolution of marriage involves consideration of such factors as the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty

and difficulty of the questions raised, and the customary charges of the bar for similar services. Morris v. Morris, 201 Neb. 479, 268 N. W. 2d 431. The record establishes that the services involved here extended over a period of more than 7 years and involved extensive consultations, depositions, and interrogatories. The trial court was fully aware of the nature and extent of the services and carefully considered the evidence. We cannot say there was any abuse of discretion in setting the fees for the wife's attorney.

The judgment of the District Court is affirmed. The wife is awarded the sum of $1,000 for the services of her attorney in this court.

AFFIRMED.